IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GWENDOLYN CONAWAY | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 3-07-CV-0906-BD |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gwendolyn Conaway seeks judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* For the reasons stated herein, the hearing decision is reversed.

I.

Plaintiff alleges that she is disabled due to a variety of physical and mental impairments. After her applications for disability and SSI benefits were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge. Two hearings were held in this case--one on April 20, 2004 and one on May 4, 2006.[1] At the time of the second hearing, plaintiff was 54 years old. She has a high school equivalency diploma and past work experience as an electronics assembler and an inspector. Plaintiff has not engaged in substantial gainful activity since August 22, 2001.

---

[1] The Appeals Council vacated the first hearing decision and remanded the case for further consideration of plaintiff's subjective complaints of disabling pain and her maximum residual functional capacity. (Tr. at 170-72).

The ALJ found that plaintiff was not disabled and therefore not entitled to disability or SSI benefits. Although the medical evidence established that plaintiff suffered from supraventricular tachycardia, bilateral carpal tunnel syndrome, an orthostatic tremor disorder, hypertension, cerebrovascular accident, a major depressive disorder, panic attacks, and a schizoaffective disorder, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that plaintiff had the residual functional capacity to perform a limited range of light work, but could not return to her past relevant employment. Relying on the testimony of a vocational expert, the judge found that plaintiff was capable of working as a fast food worker, an airline security representative, and a school bus monitor -- jobs that exist in significant numbers in the national economy. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal district court.

II.

In three grounds for relief, plaintiff contends that: (1) the ALJ improperly determined that she has the residual functional capacity to perform light work; (2) the ALJ failed to develop the record with respect to her mental impairments; and (3) the ALJ relied on faulty vocational expert testimony.

A.

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). It is more than a scintilla but

less than a preponderance. *Richardson*, 91 S.Ct. at 1427. The district court may not reweigh the evidence or substitute its judgment for that of the Commissioner, but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *Id.* § 423(d)(1)(A); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*See generally*, 20 C.F.R. § 404.1520(b)-(f). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995), *citing Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *Id.* However, procedural perfection is not required. The court will reverse an administrative ruling only if the claimant shows that his substantive rights were prejudiced. *Smith v. Chater*, 962 F.Supp. 980, 984 (N.D. Tex. 1997).

B.

Plaintiff first contends that the ALJ erred in determining that she has the residual functional capacity to perform light work. Because of her inability to lift or carry objects weighing more than 10 pounds, plaintiff maintains that the ALJ should have assessed her residual functional capacity at the sedentary level which, in turn, would have resulted in a finding of "disabled" under the Medical-Vocational Guidelines.

Under the social security regulations, "light work" is defined as work that involves lifting no more than 20 pounds with frequent lifting or carrying of 10-pound objects. *See* 20 C.F.R. § 404.1567(b). It also includes jobs that require "a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* The full range of light work requires the ability to do substantially all these activities. *Id.* This means that a claimant must be able to stand or walk for six hours out of an eight hour day, sit for the remaining two hours, occasionally lift up to 20 pounds, and frequently lift up to 10 pounds. *See* SSR 83-10, 1983 WL 31251 at *5 (S.S.A. 1983). By contrast, "sedentary work" is work that involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 C.F.R. § 404.1567(a). The ability to walk and stand is also required. *Id.* However, standing or walking should generally total no more than about two hours of an eight-hour workday, and sitting should generally total approximately six hours of an eight-hour workday. *See* SSR 83-10, 1983 WL 31251 at *5. A job is classified as "sedentary" if the claimant must walk and stand occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

At the second administrative hearing, Dr. Sterling E. Moore, a medical expert, testified that plaintiff's ability to lift and carry objects was in "the sedentary range--10 pounds maximum," as a result of her carpal tunnel syndrome. (Tr. at 614-15). However, Dr. Moore also said that plaintiff could stand, walk, and sit for six hours and had no postural limitations, except to avoid hazardous situations. (*See id.* at 614-15). Relying on this testimony and other medical evidence of record, the ALJ found that:

> [T]he claimant has the residual functional capacity to occasionally lift and/or carry (including upward pulling) 10 pounds occasionally; lift and/or carry (including upward pulling) less than 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about 6 hours in an 8-hour workday; sit (with normal breaks) for a total of

> about 6 hours in an 8-hour workday and push and/or pull (including operation of hand and foot controls) consistent with her strength limitations. The claimant's ability to perform the full range of light work, as that phrase is defined in the regulations, is reduced by inability to perform fine and gross manipulation on more than a frequent basis as a result of her bilateral carpal tunnel syndrome. In addition, the claimant must avoid heights and dangerous machinery. As a result of her depressive disorder[,] schizophrenia and panic disorder, the claimant is also moderately limited in the ability to understand and remember detailed instructions; moderately limited in the ability to maintain attention and concentration for extended periods; and moderately limited in the ability to interact appropriately with the general public.

(Tr. at 37). Plaintiff believes that her exertional limitations, particularly her inability to lift or carry objects weighing more than 10 pounds, required the ALJ to find that she could perform only sedentary work.

Contrary to plaintiff's argument, the inability to perform the full range of light work does not mean that she is capable only of sedentary work. Indeed, the social security regulations specifically contemplate a situation where residual functional capacity may be "somewhere in the middle" in terms of the regulatory criteria for exertional ranges of work. *See* SSR 83-12, 1983 WL 31253 at *1 (S.S.A. 1983). One example cited by the regulation is a claimant who, like plaintiff, is physically capable of meeting the demands of light work, except for restrictions on lifting or carrying objects. *Id.* (claimant who meets the exertional demands of light work except that he or she can lift no more than 15 pounds at a time). In such cases, the ALJ should consult a vocational expert, who "can assess the effect of any limitation on a given range of work and then advise [the ALJ] whether the impaired person's RFC permits him or her to perform substantial numbers of occupations within the range of work at issue[.]" *See Gravel v. Barnhart*, 360 F.Supp.2d 442, 448 (N.D.N.Y. 2005) (internal quotations omitted). That is precisely what occurred here. Because plaintiff's exertional profile did not precisely fit into either the light or sedentary work categories, using the Medical-Vocational

Guidelines to determine her disability status would have been improper. *Id.*[2] The ALJ properly relied on vocational expert testimony to determine whether jobs existed in significant numbers that plaintiff was capable of performing given her exertional limitations. No error was committed in this regard.

C.

Next, plaintiff argues that the ALJ failed to develop the record with respect to her mental impairments and refused to consider evidence pertaining to her schizoaffective disorder. It is well-established that the ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Cornett v. Astrue*, 261 Fed. Appx. 644, 2008 WL 58822 at *2 (5th Cir. Jan. 3, 2008); *Ripley*, 67 F.3d at 557. This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citing cases). Here, the ALJ considered evidence of plaintiff's schizoaffective disorder, including treatment notes from Parkland Hospital, Dallas MetroCare, and Dr. Rhonda Goen. (*See* Tr. at 33-34). But even if the ALJ did not properly develop the record, plaintiff has failed to demonstrate prejudice. Nothing in the new evidence submitted by plaintiff prior to the second administrative hearing suggests that she was disabled as a result of a schizoaffective disorder. Under these circumstances, remand is not appropriate. *See Bowling v. Shalala*, 36 F.3d 431, 437 (5th Cir. 1994) ("We shall . . . reverse an ALJ's decision for failure to develop the record adequately only if a claimant shows that he was prejudiced as a result of the hearing.").

---

[2] Exclusive reliance on the Medical-Vocational Guidelines also is inappropriate where, as here, a claimant's exertional limitations are combined with significant nonexertional limitations that further limit the occupational base. *Augustine v. Barnhart*, No. 1-00-CV-749, 2002 WL 31098512 at *3-4 (E.D. Tex. Aug. 27, 2002); *see also Brooks v. Astrue*, No. 1-06-CV-146-BI, 2008 WL 864799 at *3 (N.D. Tex. Mar. 27, 2008) (where a claimant cannot perform the full range of a specific level of work activity or has significant nonexertional impairments, the ALJ may not mechanically apply the Medical-Vocational Guidelines).

D.

Finally, plaintiff argues that the ALJ relied on faulty vocational expert testimony in determining that she has the residual functional capacity to perform other work in the national economy. At the administrative hearing, Suzette Skinner, a vocational expert, testified that plaintiff could work as a fast food worker, an airline security representative, or a school bus monitor. (*See* Tr. at 617-18). However, each of these jobs, as described in the *Dictionary of Occupational Titles* ("DOT"), requires abilities beyond plaintiff's residual functional capacity.

The DOT was promulgated by the Department of Labor to provide "standardized occupational information to support job placement activities." *See Dictionary of Occupational Titles* at xv (4th ed. 1991). The DOT, along with a companion volume -- *The Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* ("SCO") -- contain descriptions of the requirements for thousands of jobs in the national economy. According to the DOT, the occupations of fast food worker, airline security representative, and school bus monitor all require significant interaction with the general public. The DOT describes the job of fast food worker as:

> Serves customer of fast food restaurant: Requests customer order and depresses keys of multicounting machine to simultaneously record order and compute bill. Selects requested food items from serving or storage areas and assembles items on serving tray or in takeout bag. Notifies kitchen personnel of shortages or special orders. Serves cold drinks, using drink-dispensing machine, or frozen milk drinks or desserts, using milkshake or frozen custard machine. Makes and serves hot beverages, using automatic water heater or coffeemaker. Presses lids onto beverages and places beverages on serving tray or in takeout container. Receives payment. May cook or apportion french fries or perform other minor duties to prepare food, serve customers, or maintain orderly eating or serving areas.

*Dictionary of Occupational Titles* § 311.472-010 (fast food worker). In addition to significant customer interaction, a fast food worker must be able to reach and handle on a constant basis and finger on a frequent basis. *See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* at 365. The job of airline security representative, as defined in the DOT, involves:

> Screen[ing] passengers and visitors for weapons, explosives, or other forbidden articles to prevent articles from being carried into restricted area of air terminal, performing any combination of following tasks: Greets individuals desiring to enter restricted area and informs them that they must be screened prior to entry. Asks individual to empty contents of pockets into tray. Examines contents of tray for forbidden articles and directs individual to pass through metal-detecting device. Asks individual to remove metal articles from person if metal detector signals presence of metal, or uses hand held metal detector to locate metal item on person. Places carry-on baggage or other containers onto x-ray device, actuates device controls, and monitors screen to detect forbidden articles. Requests owner to open baggage or containers when x ray shows questionable contents. Returns baggage and tray contents to individual if no forbidden articles are detected. Notifies GUARD, SECURITY (any industry) if forbidden articles are discovered or detector equipment indicates further search is needed. May turn on power and make adjustments to equipment. May perform duties of GUARD, SECURITY (any industry). May screen boarding passengers against Federal Aviation Administration approved profile of aircraft hijackers. May make reports.

*Dictionary of Occupational Titles* § 372.667-010 (airline security representative). The DOT describes the job of school bus monitor as:

> Monitors conduct of students on school bus to maintain discipline and safety: Directs loading of students on bus to prevent congestion and unsafe conditions. Rides school bus to prevent altercations between students and damage to bus. Participates in school bus safety drills. May disembark from school bus at railroad crossings and clear bus across tracks.

*Id.* § 372.667-042 (school bus monitor). Because plaintiff is moderately limited in her ability to appropriately interact with the general public and cannot perform fine and gross manipulation on

more than a frequent basis-- limitations recognized by the ALJ in the hearing decision (*see* Tr. at 37) -- plaintiff argues that Skinner's testimony conflicts with the DOT descriptions for the jobs she allegedly can perform.

There is a split of circuit authority as to whether vocational expert testimony can provide substantial evidence to support the Commissioner's decision when it conflicts with the DOT provisions. Some courts permit the ALJ to rely on such testimony even if it conflicts with the DOT. *See Jones v. Apfel*, 190 F.3d 1224, 1229-30 (11th Cir. 1999), *cert. denied*, 120 S.Ct. 1723 (2000); *Conn v. Secretary of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995); *Sawyer v. Apfel*, 166 F.3d 1210 (Table), 1998 WL 830653 at *1 (4th Cir. Dec. 2, 1998). By contrast, the Eighth Circuit has held that the DOT job descriptions are generally more reliable than the conflicting testimony of a vocational expert. *Smith v. Shalala*, 46 F.3d 45, 47 (8th Cir. 1995). Still other courts, including the Fifth Circuit, have adopted a "middle ground" approach which allows the ALJ to rely on vocational expert testimony if the record reflects an adequate basis or a reasonable explanation for deviating from the DOT. *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000); *Haddock v. Apfel*, 196 F.3d 1084, 1091-92 (10th Cir. 1999); *Johnson v. Shalala*, 60 F.3d 1428, 1434-35 (9th Cir. 1995); *Tom v. Heckler*, 779 F.2d 1250, 1255-56 (7th Cir. 1985); *Mimms v. Heckler*, 750 F.2d 180, 186 (2d Cir. 1984). In *Carey*, the Fifth Circuit held that:

> To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT . . ., we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so. . . . Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey*, 230 F.3d at 146-47. Although Carey did not involve "the type of direct and obvious conflict . . . when the vocational expert's characterization of the exertional or skill level required for a particular job is facially different from the exertional or skill level provided for that job in the DOT," *see id.* at 145-46, lower courts that have considered such direct conflicts also have adopted this "middle ground" approach. *See Johnson v. Barnhart*, 285 F.Supp.2d 899, 913-14 (S.D. Tex. 2003); *Augustine v. Barnhart*, No. 1-00-CV-749, 2002 WL 31098512 at *9-10 (E.D. Tex. Aug. 27, 2002); *Hollan v. Apfel*, No. 3-00-CV-0002-H, 2001 WL 180151 at *6 (N.D. Tex. Feb. 20, 2001). Thus, at least in this circuit, vocational expert testimony may be accepted over a conflicting DOT provision if "the record reflects an adequate basis for doing so." *Carey*, 230 F.3d at 146.

Here, there is a direct conflict between Skinner's testimony that plaintiff can work as a fast food worker, an airline security representative, or school bus monitor, despite moderate restrictions in her ability to interact with the general public, and the DOT, which describes such jobs as requiring significant public interaction. *See Woods v. Barnhart*, 458 F.Supp.2d 336, 354 (S.D. Tex. 2006) (noting conflict between vocational expert testimony that claimant could work as a security guard, despite limitations in ability to interact with general public, and DOT, which requires security guard to be adept at dealing with people and performing effectively under stress). Additionally, there is a direct conflict between Skinner's testimony that plaintiff can work as a fast food worker, despite limitations on her ability to perform fine and gross manipulation on more than a frequent basis, and the DOT, which classifies the job as requiring reaching and handling on a constant basis. Although the ALJ found that such testimony was consistent with the DOT, (*see* Tr. at 40), nothing in the record explains how these jobs can be performed by someone who is moderately limited in the ability to interact appropriately with the public. Nor is there anything to suggest that either the vocational expert or the ALJ was actually aware of the conflict with the DOT requirements. "When

vocational evidence provided by [an expert] is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the [ ] evidence to support a determination or decision that the individual is or is not disabled." SSR 00-4p, 2000 WL 1898704 at *4 (SSA 2000); *see also Long v. Barnhart*, No. 03-2570-JWL, 2004 WL 1960104 at *12 (D. Kan. Sept. 3, 2004). If the conflict is resolved in favor of the vocational expert, the ALJ must articulate a "plausible reason" for accepting testimony that conflicts with the DOT so that the hearing decision is susceptible to meaningful judicial review. *Augustine*, 2002 WL 31098512 at *10; see also SSR 00-4p (providing examples of reasonable explanations for disregarding DOT). In this case, the ALJ failed to articulate any reason for disregarding the DOT's nonexertional requirements for the jobs of fast food worker, airline security representative, or school bus monitor. As a result, this part of the hearing decision is not supported by substantial evidence and must be reversed.

## CONCLUSION

The hearing decision is reversed and this case is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion.[3]

SO ORDERED.

DATED: November 10, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE

---

[3] By remanding this case for further administrative proceedings, the court does not suggest that plaintiff is or should be found disabled.